UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| RIMS BARBER; CAROL BURNETT; JOAN BAILEY; KATHERINE ELIZABETH DAY; ANTHONY LAINE BOYETTE; DON FORTENBERRY; SUSAN GLISSON; DERRICK JOHNSON; DOROTHY C. TRIPLETT; RENICK TAYLOR; BRANDIILYNE MANGUM-DEAR; SUSAN MANGUM; JOSHUA GENERATION METROPOLITAN COMMUNITY CHURCH; CAMPAIGN FOR SOUTHERN EQUALITY and THE REV. DR. SUSAN HROSTOWSKI, | § | CIVIL ACTION NO. 3:16-cv-417-CWR-LRA<br><br>consolidated with<br><br>CIVIL ACTION NO. 3:16-cv-442-CWR-LRA |
| Plaintiffs, | § | |
| vs. | § | |
| PHIL BRYANT, in his official capacity as Governor of the State of Mississippi; JIM HOOD, in his official capacity as Mississippi Attorney General; JOHN DAVIS, in his official capacity as Executive Director of the Mississippi Department of Human Services; and JUDY MOULDER, in her official capacity as Mississippi State Registrar of Vital Records, | § | |
| Defendants. | | |

**MEMORANDUM OF LAW OF *CSE* PLAINTIFFS
IN OPPOSITION TO DEFENDANTS BRYANT'S AND DAVIS'S
MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

Plaintiffs the Campaign for Southern Equality and The Rev. Dr. Susan Hrostowski (the "CSE Plaintiffs"), submit this Memorandum of Law in opposition to the Motions to Stay the Preliminary Injunction pending appeal filed by Defendants Phil Bryant and John Davis.

## PRELIMINARY STATEMENT

After a two day evidentiary hearing which included the testimony of eight witnesses and 41 exhibits admitted into the record, this Court issued a thorough, carefully reasoned, sixty-page opinion holding that HB 1523 violates the Establishment and Equal Protection Clauses of the First and Fourteenth Amendments for several independent reasons, any one of which on its own would be enough to justify preliminarily enjoining enforcement of the law. Defendants' motion to stay, which seeks to upend the status quo and allow HB 1523—a statute that this Court has found to be blatantly unconstitutional—to go into effect, provides no persuasive reason why this Court should stay its ruling pending appeal. Rather, Defendants' brief relies upon misrepresentations of the record, misreadings of the relevant authorities, and mischaracterizations of HB1523 itself. Defendants clearly have not satisfied their heavy burden of showing the kind of abuse of discretion necessary to require this Court to stay its own preliminary injunction, and their motion should therefore be denied.

## STANDARD OF REVIEW

"'A stay is an intrusion into the ordinary processes of administration and judicial review' and a party is not entitled to a stay as a matter of right." *Campaign for S. Equal.* v. *Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Nken* v. *Holder*, 556 U.S. 418, 427 (2009)). "The parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled to the prompt execution of" judgments. *Nken*, 556 U.S. at 427. Thus

1

Defendants Bryant and Davis, as the "part[ies] requesting a stay," "bear[] the burden of showing that the circumstances justify an exercise of [this Court's] discretion." *Id.* at 433-34; *see also Moore* v. *Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (per curiam).

Courts "consider four factors in deciding whether to grant a stay pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Texas* v. *United States*, 787 F.3d 733, 74647 (5th Cir. 2015) (internal quotation marks omitted). In other words, given this standard, in order "[t]o succeed on the merits, [a party] must show that [the court] *abused its discretion* by entering a preliminary injunction." *Id.* at 747 (emphasis added). As set forth more fully below, Defendants have plainly failed to do so here.

ARGUMENT

I. Likelihood of Success on the Merits

This Court has already and correctly concluded that "plaintiffs are substantially likely to succeed on their claim that HB 1523 violates the First . . . Amendment[]." Slip op. at 57. Nothing in Defendants' papers calls this conclusion, which is itself based on at least two independent reasons for the statute's unconstitutionality, into question. *See id.*[1]

A. HB 1523 Violates the Establishment Clause of the First Amendment

This Court correctly held that HB 1523 violates the Establishment Clause for at least two independent reasons. First, HB 1523 establishes an official preference for certain

---

[1] The *CSE* Plaintiffs address only arguments that are relevant to their Establishment Clause claims, as set forth in their Complaint and Motion for a Preliminary Injunction.

2

religious denominations over other religious denominations. And second, "its broad religious exemption comes at the expense of other citizens." *See generally* slip op. at 42–57.

1. HB 1523 Establishes Preferred Religious Beliefs

With respect to denominational preference, this Court concluded that HB 1523 "constitutes an official preference for certain religious tenets."[2] Slip op. at 48. And because HB 1523 "'clearly grants denominational preferences of the sort consistently and firmly deprecated in [Supreme Court] precedents,' the law must be treated as 'suspect' and subject to strict scrutiny." Slip op. at 52 (quoting *Larson* v. *Valente*, 456 U.S. 228, 246-47). This Court further concluded that HB 1523 did not survive strict scrutiny because Defendants were unable to identify a "sufficiently compelling," "actual concrete problem" that HB 1523 was intended to address to justify such sectarian discrimination. Slip op. at 53 (quoting *Awad* v. *Ziriax*, 670 F.3d 1111, 1129 (10th Cir. 2012)).

In arguing that the Court erred and is likely to be reversed by the United States Court of Appeals for the Fifth Circuit on appeal, Defendants do not even attempt to identify a concrete, compelling government interest that HB 1523 is narrowly tailored to address.[3] Instead, Defendants argue that the State is free to discriminate between religious sects by "decid[ing] that

---

[2] Documents recently released by Governor Bryant underscore this Court's finding that "HB 1523 was not motivated by any clearly secular purpose—indeed, the statute had *no* secular purpose." Slip op. at 53 n.43 (internal quotation marks omitted). These documents reveal that the Alliance Defending Freedom ("ADF")—a sectarian Christian ministry that advocates against gay rights and with the express purpose of seeing Christian principles enacted into law—played a key role in enacting HB 1523. *See generally* Kaplan Decl. The ADF sent Governor Bryant a draft executive order that contains nearly identical language to HB 1523, prepared talking points and a PR strategy for the governor's office, and even drafted Governor Bryant's signing statement. Kaplan Decl. Exs. G-K, O. These documents are consistent with Professor Douglas NeJaime's testimony that the ADF drafted model legislation for HB 1523 and that the three preferred religious beliefs identified in § 2 reflect the ADF's focus on the so-called "natural family." H'rg Tr., Vol. 1 at 62:1864:21. (June 23, 2016)

[3] Ironically, rather than attempt to identify a problem—compelling or otherwise—that HB 1523 was intended to address, Defendants appear to take the opposite tack, trumpeting the entirely symbolic nature of HB 1523 and the general lack of protections for LGBT people in Mississippi by noting that "[e]ven before HB 1523, Mississippi law has permitted businesses to discriminate on account of sexual orientation." Defs.' Br. at 3. As this Court concluded, however, in connection with its equal protection analysis, that only means that the true motivation behind HB 1523 was unconstitutional animus and that the whole point of HB 1523 was to send the message that the State of Mississippi endorses three specific anti-LGBT religious beliefs, a message obviously prohibited by the Establishment Clause of the First Amendment. Slip op. at 33–38.

3

some beliefs are worthy of special protections and accommodations, while other beliefs aren't." Defs.' Br. at 5. Not surprisingly, there is only one case Defendants cite for this point, *Gillette* v. *United States*, 401 U.S. 437 (1971). However, the *Gillette* case illustrates precisely why their argument makes no sense here.

In *Gillette*, which this Court cited for the proposition that "the Establishment Clause forbids [even] subtle departures from neutrality," 401 U.S. at 452, the Supreme Court upheld the military conscription conscientious objector statute against an Establishment Clause challenge brought by draftees with a religious objection not to "participation in war in any form," but instead "to participation in a particular war." *Id.* at 447. In reaching this result, the Court first noted that—unlike HB 1523—the challenged statute did not facially discriminate between religious beliefs or faiths. *Id.* at 452. The Court then explained that, even if the challenged statute created a "religious gerrymander[]" and had the unintended effect of discriminating between religious denominations, it did not offend the Establishment Clause because the law "serve[d] a number of valid purposes having nothing to do with a design to foster or favor any sect, religion, or cluster of religions." *Id.* at 452.

The Court went on to explain in some detail the serious risks of extending exemptions on the basis of an ultimately subjective criterion—assessing a claim that a particular war is "unjust" at a particular time involves "an enormous number of variables" rendering it "impossible to conduct [an assessment] with any hope of reaching fair and consistent results." *Id.* at 455–56. Unlike HB 1523, the conscientious objector statute at issue in *Gillette* served an important government interest (namely, avoiding the danger that an untrainable pacifist conscript would pose to his or her fellow soldiers) and therefore survived heightened scrutiny. *Id.* at 452–53; *see also Larson* v. *Valente*, 456 U.S. 228, 247 (1982) (holding that a sect-discriminatory law

4

"must be invalidated unless it is justified by a compelling governmental interest"); Jesse H. Choper, *The Rise and Decline of the Constitutional Protection of Religious Liberty*, 70 Neb. L. Rev. 651, 660 (1991) ("In my view, the best explanation for the result in *Gillette* is that the Court concluded that the Selective Service Act survived some form of heightened scrutiny.").

        2.       HB 1523's Accommodations Injure Other Citizens

Defendants' response to this Court's holding that the accommodations afforded by HB 1523 impermissibly burden other Mississippians (including but not limited to LGBT people) who do not share the § 2 preferred religious beliefs is similarly unpersuasive. First, Defendants implicitly argue that HB 1523 somehow does not burden Mississippians who do not hold § 2 beliefs because the law identifies "some beliefs [that] are worthy of special protections and accommodations." Defs.' Br. at 5. In others words, Defendants argue that HB 1523 treats Mississippians of all faiths equally, but treats some more equally than others. This argument does not pass the laugh test. As this Court explained: "If three specific beliefs are 'protected by this act,' it follows that every other religious belief a citizen holds is *not* protected by the act." Order at 48.

Defendants' only other argument is that the injury to other citizens caused by HB 1523 should be discounted because Plaintiffs failed to adduce evidence showing that they "will suffer any concrete injury if HB 1523 is implemented." Defs.' Br. at 5-6. This contention, however, simply ignores the two days of testimony in open court at the preliminary injunction hearing regarding the effects of HB 1523 on both the plaintiffs and others throughout Mississippi. For example, Kathy Garner, the executive director of the AIDS Services Coalition of Hattiesburg, testified that if HB 1523 goes into effect and mental health professionals are permitted, because of a § 2 belief, to deny counseling to newly diagnosed HIV patients (both straight and gay) who acquired the virus from extramarital sex, "people will die" because they

5

will decline to be tested in the first place or fail to take the necessary medications after receiving an HIV diagnosis. Prelim. Inj. Hr'g Tr. 183:10–184:5, June 23, 2016. Joce Pritchett, a lesbian and lifelong Mississippian, shared her harrowing experiences as well of those of her friends and community members—LGBT residents who became afraid to go out in public or eat in restaurants since HB 1523 was enacted. *Id.* at 204:18–205:4. Joce also testified that, after HB 1523 was enacted, a six-year-old girl was bullied by her Mississippi public school teacher simply for being the child of lesbian parents. *Id.* at 205:7–207:18. Plaintiff Susan Hrostowski testified that when HB 1523 was enacted, "all that fear, all of that insecurity comes back to the old days when you – you don't know what restaurant you're going to be able to go into without being denied." *Id.* at 133:14–17. Thus, the uncontroverted evidence heard by the Court over two days clearly shows that, if allowed to go into effect, HB 1523 will cause sweeping harm to some of the most vulnerable members of society.[4]

3. Plaintiffs' Establishment Clause Injury Gives Rise to Standing

Defendants' arguments with respect to standing are similarly meritless. First, Defendants argue that mere "offense" at HB 1523 is not a cognizable Establishment Clause injury. But to advance this argument, Defendants mischaracterize the two days of testimony discussed above about the deep and personal harms imposed on Plaintiffs and their communities by HB 1523, mischaracterizing their injury as a petty "unfulfilled desire to see other people penalized or punished by the State." Defs.' Br. at 3-4. As this Court made clear, the injury suffered by the Plaintiffs here as a result of HB 1523 is clearly distinguishable from the injury

---

[4] For this argument, the ample evidence of wider harm to the community is as important as the evidence of harm to the Plaintiffs themselves. In *Thornton* v. *Caldor*, the Supreme Court did not hold that a religious accommodation oversteps the bounds of the First Amendment by burdening only the particular *plaintiffs*; rather, the Court found that the challenged statute impermissibly advanced religion by imposing a burden on the claimant's coworkers, who were not parties to the case at all. 472 U.S. 703, 708–09 (1985) ("The State has thus decreed that those who observe a Sabbath any day of the week as a matter of religious conviction must be relieved of the duty to work on that day, no matter what burden or inconvenience this imposes on the employer *or fellow workers*." (emphasis added)).

alleged by the plaintiffs in *Valley Forge Christian College* v. *Americans United for Separation of Church and State*, 454 U.S. 464, 485-86 (1982), the sole case on which Defendants rely for this point. In *Valley Forge*, plaintiffs' alleged injuries were insufficient to establish standing because they had merely learned through news reports of a potential Establishment Clause violation in another state. 454 U.S. at 486–87. Here, in sharp contrast, "[t]he plaintiffs may have become aware of HB 1523 from news, friends, or social media, but regardless of how they learned of the legislation, it is set to become the law of *their state* on July 1. It will undeniably impact their lives. The enactment of HB 1523 is much more than a 'psychological consequence' with which they disagree, it is allegedly an endorsement and elevation by *their* state government of specific religious beliefs over theirs and all others." Slip op. at 23 (distinguishing *Valley Forge*).[5]

    B.    Section 3(1)(a) Is Not Severable

Defendants also contend that the Court's preliminary injunction order is unlikely to survive appellate review because the Court did not sever § 3(1)(a) of HB 1523. The apparent basis for this argument—which they make for the first time in their motion to stay—is the mistaken assertion that this Court "acknowledged in its memorandum opinion that the Constitution allows Mississippi to enact and enforce section 3(1)(a) of HB 1523[.]" Defs.' Br. at 6. But that is incorrect. Rather, the Court made the unremarkable observation that the Free Exercise Clause of the First Amendment already guarantees religious organizations the right to choose which weddings they will solemnize. Slip op. at 12. Section 3(1)(a) of HB 1523, however, is different. It provides that "(1) The State government shall not take any discriminatory action against a religious organization wholly or partially on the basis that such

---

[5] Citing *Gillette*, Defendants also argue that Plaintiffs lack standing to challenge HB 1523 as an endorsement of religion. Defs.' Br. at 4. But Defendants somehow neglect to mention that the plaintiffs in *Gillette actually had standing* to bring their challenge—the fact that they ultimately lost on the merits obviously has no bearing on the standing analysis.

organization: (a) Solemnizes or declines to solemnize any marriage, or provides or declines to provide services, accommodations, facilities, goods or privileges for a purposes related to the solemnization, formation, celebration or recognition of any marriage, *based upon or in a manner consistent with a sincerely held religious belief or moral conviction described in Section 2 of this act*." HB 1523 § 3(1)(a) (emphasis added).

Thus, § 3(1)(a) does not merely purport to safeguard the right of religious organization to decline to solemnize a wedding; it purports to restrict that right only to those who hold the religious beliefs identified in § 2. As a result, § 2 is the indispensable centerpiece of § 3(1)(a) (and the entire rest of HB 1523). This Court correctly concluded that "an injunction as to § 2 renders every other section inoperable as a matter of law." Slip op. at 57 n.46. Section 3(1)(a), which applies *only* to people and organizations who espouse the three state-endorsed religious beliefs identified in § 2, is therefore "inoperable" and unconstitutional no matter what.[6]

Here, it is clear from the record that § 2 is an indispensable part of HB 1523 and that that the Mississippi legislature "would [not] have enacted the valid part of the statute independently of the invalid part." *Wilson* v. *Jones Cnty. Bd. of Supervisors*, 342 So. 2d 1293, 1297 (Miss. 1977). Indeed, no speculation on this point is necessary since we know that the Mississippi legislature voted to reject amendments that would have extended HB 1523 to cover religious beliefs beyond those specified in § 2. Pls.' Ex. CSE-28, Unofficial Tr. of Feb. 19, 2016 House Debate 25:15-27:25; *see also* Pls.' Ex. CSE-28, Unofficial Tr. of Mar. 30, 2016 Senate Debate 42:23-46:9. In floor statements, the bill's sponsors and supporters made clear that HB

---

[6] Furthermore, § 3(1)(a) does not merely purport to safeguard the right to decline to solemnize a wedding; it also permits all religiously affiliated organizations to "decline[] to provide services, accommodations, facilities, goods or privileges" for a purpose related to the "recognition" of any marriage. This Court already held that provisions such as § 3(1)(a), which "identif[y] persons by a single trait and then den[y] them protection across the board" violate the Equal Protection Clause. Slip op. at 41 (quoting *Romer*, 517 U.S. at 633).

1523 was enacted as a direct and targeted response to *Obergefell*, and that the religious beliefs singled out in § 2 were chosen for that reason. *See, e.g.*, Pls.' Ex. CSE-28, Unofficial Tr. of Mar. 30, 2016 Sen. Debate 24:4-8. (Statement of Sen. Jenifer Branning). As a result, if a church declined to solemnize a marriage between a couple where one spouse had previously been divorced, or a Rabbi declined to solemnize the marriage of a Jew to a non-Jew, they would, of course, be protected by the First Amendment—but they would have no rights under HB 1523. As Senator Branning made clear, HB 1523 "is very specific to same-sex marriage." *Id.* at 24:12–13. The legislature did not and would not have voted to extend such sweeping protections to all sincerely-held religious beliefs. In other words, § 2 is "so intimately connected with" the other provisions of the statute "as to warrant a belief that the legislature intended them as a whole." *Wilson*, 342 So. 2d at 1296.

Moreover, defendants failed to preserve this novel severability argument for appeal in any event.[7] To preserve an argument for appeal, a party must "press and not merely intimate the argument during the proceedings before the district court." *Rosedale Missionary Baptist Church* v. *New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (quoting *FDIC* v. *Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) (internal quotation marks omitted)). A party must raise the argument "to such a degree that the district court has an opportunity to rule on it." *Id.* (internal quotation marks omitted). Defendants did not "press" their argument for severance of any sort, let alone the specific severability of § 3(1)(a) they articulated for the first time in their motion to stay. Prior to their motion to stay, Defendants did no more than reference the fact that

---

[7] This Court is required to consider whether Defendants have a substantial likelihood of success on the merits on their appeal. It would therefore be improper to consider arguments that Defendants are foreclosed from making before the Court of Appeals, even if it might be proper for this Court to consider them on, for example, a motion for reconsideration. *See In re Kassover*, No. 01 Civ. 0003 (NRB), 2001 WL 1204137, at *1 (S.D.N.Y. Oct. 11, 2001) (denying stay pending appeal because petitioner's failure to preserve issues for appeal meant that her appeal was not likely to succeed).

Mississippi has a general severability provision in a footnote in their memorandum of law and once sentence at oral argument. *See* ECF No. 43, at 6 n. 3 ("Whether an invalid or unconstitutional portion of a statute is severable is an issue of state law. . . . The Mississippi Code contains a general severability provision." (citations omitted)) (June 22, 2016); H'rg Tr., Vol. 2 at 319–20 (June 24, 2016) ("Moreover, to the extent, even though this law doesn't have a specific severability provision in it, as the court's well aware, Mississippi—the Mississippi Code includes a general severability provision which is incorporated into every law whether or not it's specifically mentioned or not.") Merely mentioning a legal theory, and not applying it by "making and substantiating" an argument, however, is not sufficient to preserve the argument for appeal. *In re Frazin*, 732 F.3d 313, 324 (5th Cir. 2013).

II.  Defendants Will Not Suffer Irreparable Harm in the Absence of a Stay

Defendants half-heartedly assert that the State will suffer irreparably injury absent a stay because the injunction prevents the State from enforcing HB 1523. But their only support for this argument are two cases, both of which involved a specific and concrete harm that would arise if the district court's injunction were allowed to remain in force. In *Maryland* v. *King*, for example, Chief Justice Roberts noted that the enjoined DNA testing policy "provid[ed] a valuable tool for investigating unsolved crimes and thereby helping to remove violent offenders from the general population." 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). It was not the mere fact of the injunction that caused the state irreparable harm, rather it was "[t]hat Maryland may not employ a duly enacted statute *to help prevent these injuries*" that constituted irreparable harm. *Id.* (emphasis added). And in *Planned Parenthood of Greater Texas Surgical Health Services* v. *Abbott*, the Fifth Circuit placed great weight on the substantial interest of Texas "in regulating the medical profession." 734 F.3d 406, 411 (2013) (internal quotation marks omitted). According to the *Planned Parenthood* Court's logic (which has since been decisively

rejected by the United States Supreme Court in *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292 (2016), *rev'g Whole Woman's Health* v. *Cole*, 790 F.3d 598 (5th Cir. 2015)), the challenged statute served the substantial government interest of protecting women's health, such that enjoining the statute would irreparably harm the state.

Here, by contrast, and as discussed above, Defendants cannot identify any state interest served by HB 1523 that is in any way comparable to the preservation of health or physical safety at issue in *King* and *Planned Parenthood*.[8] To the contrary, Defendants argue that there is no evidence that Plaintiffs will be discriminated against or otherwise injured if HB 1523 goes into effect—and, therefore, no evidence that any religious Mississippian will be "penalized or punished by the State." *See* Defs.' Br. at 3–4. In light of Defendants' assertion on the one hand that, should HB 1523 be allowed to go into effect, no Mississippian will invoke its protections, they cannot possibly argue on the other hand that the State of Mississippi is somehow harmed by this Court's preliminary injunction.

III.   Defendants Have Failed to Make a Strong Showing that Plaintiffs Would Not Be Substantially Injured by a Stay

As this Court found, HB 1523 causes Plaintiffs cognizable injury by "depriv[ing] LGBT citizens of equal treatment and equal dignity under the law," slip op. at 36, causing ongoing First Amendment injury. *Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *see also Baker* v. *Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (per curiam) (denying a stay pending appeal of a district court's injunction ordering the removal

---

[8] In *Whole Women's Health*, the Supreme Court ultimately concluded that the state's purported interest in women's health was pretextual. 136 S. Ct. at 2319 (holding that the challenged provisions "vastly increase the obstacles confronting women seeking abortions in Texas without providing any benefit to women's health capable of withstanding any meaningful scrutiny); *see also id.* at 2321 (Ginsburg, J., concurring) ("[I]t is beyond rational belief that H.B. 2 could genuinely protect the health of women[.]").

11

of Ten Commandments monuments from school property because "the granting of a stay pending appeal will subject the high school students and others who frequent the schools to continuing violations of the Establishment Clause"). Allowing HB 1523 to go into effect, even temporarily, would cause Plaintiffs substantial, irreparable, and utterly unnecessary constitutional injury.

IV. Defendants Have Failed to Make a Strong Showing That Violating Constitutional Rights Is in the Public Interest

Finally, it goes without saying that injunctions protecting constitutional rights "are always in the public interest." *Opulent Life Church* v. *City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). This Court has already found that HB 1523 violates Plaintiffs' constitutional rights and cannot be said to reflect the public interest. As Defendant Bryant forcefully argued the last time he appealed this Court's preliminary injunction protecting Plaintiffs' constitutional rights, "the public interest would best be served by holding the status quo until [the Fifth Circuit] ha[s] spoken." Opposed Emergency Mot. To Stay Effect of Prelim. Inj. Pending Appeal, *Campaign for S. Equal.* v. *Bryant*, 14-60837, Doc. 00512850678, at 5 (Nov. 26, 2014). On this point, we completely agree with Governor Bryant—the status quo should be maintained and, as a result, HB 1523 should not go into effect.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for a stay pending appeal.

Dated: July 21, 2016

| **PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP** | **FISHMAN HAYGOOD, LLP** |
|---|---|
| By: /s/ Roberta A. Kaplan<br>   Roberta A. Kaplan*<br>   Joshua D. Kaye*<br>   Jacob J. Taber*<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Tel: (212) 373-3000<br>Fax: (212) 757-3990<br>rkaplan@paulweiss.com<br>jkaye@paulweiss.com<br>jtaber@paulweiss.com | By: /s/ Alysson Mills<br>Alysson Mills<br>   Bar No. 102861<br>201 St. Charles Avenue, Suite 4600<br>New Orleans, Louisiana 70170<br>Tel: (504) 586-5253<br>Fax: (504) 586-5250<br>amills@fishmanhaygood.com |

Zachary A. Dietert*
2001 K Street NW
Washington, DC 20009
Tel: (202) 223-7300
Fax: (202) 223-7420
zdietert@paulweiss.com

*Attorneys for Plaintiffs Campaign for Southern Equality and Susan Hrostowski*
*\*Admitted Pro Hac Vice*

# CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2016, I electronically transmitted the above and foregoing document to the Clerk of the Court using the ECF system for filing.

By:   /s/ Roberta A. Kaplan
Roberta A. Kaplan*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
rkaplan@paulweiss.com
